UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                              Plaintiff

v.                                                              Criminal Action No. 3:25-cr-00058-RGJ

HUMBERTO AVILA-MURILLO                                                                Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

The United States moves to revoke release order [DE 12] pursuant to 18 U.S.C. § 3145(a)(1). [DE 10]. The Defendant, Humberto Avila-Murillo ("Murillo-Avila")[1] responded. [DE 13]. This matter is ripe. For the reasons stated below, the United States's motion [DE 10] is **DENIED**.

### I.      BACKGROUND

A criminal complaint and arrest warrant were issued for Murillo-Avila on March 14, 2025. [DE 1]. Murillo-Avila appeared for his initial appearance on March 18, 2025. [DE 1, DE 3]. Murillo-Avila was then indicted on March 19, 2025, on one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(8). It is alleged that Murillo-Avila "knowingly possessed . . . a firearm . . . with knowledge that he was an alien illegally and unlawfully in the United States." [DE 5]. On March 20, 2025, Murillo-Avila was arraigned, and a

---

[1] It was noted on the record during the detention hearing that the Defendant's name is "Murillo-Avila" and thus Defendant's name is improperly listed in the Criminal Complaint [DE 1] and Indictment [DE 5]. The parties agreed to and did refer to the Defendant by his proper name during the recorded detention hearing, and the Court does so in this order. While the Court has the ability pursuant to Rule 36 to correct clerical errors in the record, it does not have the ability to change a complaint, indictment, or charging document. As a result, the Court requests the United States to take such steps necessary to correct the charging document to reflect the proper name of the Defendant and request the Clerk of Court to change the caption to reflect the same.

1

detention hearing held. [DE 12]. Murillo-Avila was ordered released on bond with conditions pending trial, but that order was stayed at the request of the United States. [*see* DE 12 at 42].

At the time of the detention hearing, it was established that this is not a presumption case, and that Murillo-Avila has never been removed from the United States. Murillo-Avila is 28 years old, came to the United States as an infant or toddler, and as evidenced in the detention hearing he speaks English and participated without an interpreter. He lives with his fiancé, a United States citizen, and works at a local tire store. A Department of Homeland Security ("DHS") Immigration Detainer – Notice of Action ("ICE Detainer") was issued for Murillo-Avila to the US Marshals stating that "probable cause exists that the subject is a removable alien," and requesting the Marshals notify DHS should Murillo-Avila be ordered released and maintain custody of Murillo-Avila for an additional 48 hour period beyond Murillo-Avila's release date in order for DHS to take Murillo-Avila into custody.

A pretrial services report was prepared by the United State Probation office based on information provided by arresting officers and a criminal record check. But a pretrial interview of Murillo-Avila was not conducted. The pretrial services report recommended detention and assessed that Murillo-Avila poses a risk of nonappearance because of history of failure to appear in two Jefferson County District Court traffic citation cases and "[t]ies to a Foreign Country." The pretrial services report found "no known factor indicating the defendant poses a risk of danger to the community." No further report or interview was ordered from pretrial services.

The United States asserted that detention was appropriate because (1) Murillo-Avila is dangerous because this is a firearm offense, in which he had a loaded handgun on his person early in the morning at his place of employment, (2) Murillo-Avila has a history of traffic offenses, which include reckless driving, use of marijuana, and failure to appear, (3) he failed to appear for

a traffic violation when the stakes were much lower and his risk of flight is higher now that he could be deported, and (4) he has a significant risk of nonappearance because he is an illegal alien with an ICE detainer and thus he will be deported pursuant to removal proceedings before this matter can be concluded if not detained.

At the detention hearing, Murillo-Avila argued that the United States has failed to meet its burden to show either risk of nonappearance or dangerousness. His counsel emphasized that he was at work doing his job when approached by law enforcement officers who were at his place of employment to arrest his father. His counsel noted that he fully complied with law enforcement, answering their questions and cooperating. He reiterated that the only reason he cannot lawfully possess a firearm is because of his immigration status, not because of a history of violence or criminal conduct. Further, Murillo-Avila was not using the firearm when approached but merely possessed it for personal protection because he had been previously assaulted and advised to have protection at the tire shop. In short, he argued the only thing that prevents him from having firearm legally is his immigration status. He argued his criminal record is minimal and that the 2015 traffic citation in the pretrial services report was dismissed. He emphasized that he has worked at tire shop for multiple years, which is a family business. He indicated he would return to working if released. He is a lifelong resident Louisville, graduated from high school, and lives with fiancé and girlfriend of 12 years. He represented that she is a United States citizen and willing to serve as custodian. He stated he would agree to any number of conditions of release including no possession of firearms and GPS monitoring. He also represented if released he would attempt to resolve with his immigration status and any potential removal proceedings as quickly as possible.

The Magistrate Judge held the United States failed to meet its burden to demonstrate sufficient risk of failure to appear or dangerousness to the community to warrant detention and

3

instead released Murillo-Avila on a $25,000 unsecured appearance bond with additional conditions including submitting to supervision by and reporting to the U.S. Probation Office, restricting travel to the Western District of Kentucky, not possessing a firearm, participating in location monitoring, and not driving a motor vehicle until/unless a valid driver's license is obtained. [DE 14].

The United States immediately moved to revoke Murillo-Avila's release order, [DE 10], arguing that it has proven risk of nonappearance based on Murillo-Avila's ICE detainer, as well as dangerousness due to the nature and circumstances of the charge. Murillo-Avila responded, [DE 13], arguing that the United States fails to meet its burden to demonstrate either risk of nonappearance or dangerousness and the appearance bond and conditions ordered by the Magistrate Judge are sufficient.

## II.    DISCUSSION

### 1. Standard

18 U.S.C. § 3145(a) governs review of release orders and provides that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . [t]he motion shall be determined promptly." The statute also provides that "the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2). This Court reviews a Magistrate Judge's release or detention order *de novo*. *United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *2 (E.D. Mich. Sept. 12, 2016) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985)). On review, this Court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*,

91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. It provides four options: (1) release on personal recognizance or after execution of an unsecured appearance bond, (2) release on a condition or combination of conditions, (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a). A defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004)(noting that the requirement is not one of "guarantee," but instead "reasonable assurance"). To merit an order of detention, the United States must prove either (1) that the defendant poses a serious risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) that he poses a risk to the safety of others and the community, *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably assure appearance of the defendant and safety of the community, the district court considers four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person and/or the defendant poses a threat to the safety of any other person in the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). Proof of risk for flight is determined by a preponderance of the evidence. *United States v. Kirk*, No. 93-1459, 992 F.2d 1218 (6th Cir. 1993).

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv); *United States v. Spivak*, 555 F. Supp. 3d 541, 549 (N.D. Ohio 2021).

  **2. Motion to Revoke Release Order**

The Magistrate Judge found that the United States failed to meet it burden for detention and on a *de novo* review this Court agrees both as to risk of flight and danger to the community.

  a. <u>Risk of Nonappearance and Risk of Flight</u>

The "risk of flight" under subsection 18 U.S.C. 3142(f)(2)(A) is viewed as a subset of the broader and more general "risk of nonappearance" set forth in 18 U.S.C. 3142(e). *United States v.*

*White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("'[I]t is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk. In the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins. Precision about these distinctions is constitutionally mandated and statutorily required.'") (quoting Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677 (2018)).

The preponderance of the evidence standard requires that the risk of flight be substantial, rather than speculative or theoretical. *United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023) (noting that "serious risk of flight" requires more than a mere possibility of nonappearance) (citing *White*, 2021 WL 2155441 at *7). The mere existence of a removal order or ICE detainer is insufficient, alone, to establish a serious risk of flight. *United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018) (emphasizing that the Bail Reform Act and immigration analyses are distinct); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based."); *United States v. Salgado*, No. CR 20-53JJM, 2020 WL 4747931, at *4 (D.R.I. Aug. 17, 2020), at *4 (holding that neither a serious risk of flight under § 3142(f)(2)(A) nor a risk of nonappearance under § 3142(e) can be established per se by an ICE detainer, even if removal might result in a nonvolitional failure to appear). "The core inquiry . . . is whether there is a serious risk a defendant will *voluntarily* evade judicial oversight." *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *5 (E.D. Ky. Mar. 5, 2025).

Here, the United States argues that Murillo-Avila is a flight risk because of the ICE detainer and a more general risk of non-appearance because of the ICE detainer. As set forth above, it

would not be appropriate for the Court to consider the ICE detainer alone as a basis to find risk of flight or risk of nonappearance, even if removal might result in involuntary failure to appear. It appears from the discussion during the detention hearing that this is Murillo-Avila's first ICE detainer, that any immigration proceedings have not been completed, there is no final order of removal, and that he has never been previously deported. The Court has considered the possibility that ICE could remove Murillo-Avila after his release, or that he could have proceedings in front of an immigration court, but these considerations are speculative. The United States, whether through the Attorney General or the Secretary of Homeland Security, will decide whether to pursue this case judicially or through removal proceedings. Should the executive branch, through the Secretary of Homeland Security, ultimately remove Murillo-Avila, that will not be a voluntary act of Murillo-Avila. That is not a determination or factor appropriate for this Court.

There is evidence that Murillo-Avila failed to appear in two instances in Jefferson County District Court cases involving traffic citations. One of those cases was ultimately dismissed in 2015 when he was 19 years old, while the other is pending and there has been no conviction. While these cases lend support to the United States's argument, they were in traffic court, one of them was over ten years ago, and there are little to no details provided about the notice given or nature of the nonappearance. What is detailed in the record is that when approached by law enforcement officers at the tire shop, Avila-Murrilo did not flee or attempt to flee, was cooperative, answered the officers' questions, and provided the location of his father's firearms inside the tire shop.

There is no evidence that he has strong ties to Mexico, has ever traveled to Mexico, or ever been removed. While the pretrial services report noted "Ties to a Foreign Country," this statement was based solely on his father's prior deportations and alien status. The United States Probation Office confirmed that there was no interview conducted as this was an expedited report and no

8

independent ties to a foreign country that would support flight. The record reflects that he has been in this country since age three, speaks English, graduated from high school, and has strong ties to this community. His fiancé is a citizen, he has resided in the area for nearly all his life and has long term continuous employment.

The ICE detainer coupled with the traffic citations do not demonstrate a risk of flight or nonappearance by a preponderance of the evidence, especially when considered in combination with the other 3142(g)(1) factors discussed below and the conditions set by the Court.

    b. <u>Danger to the Community</u>

As to the risk of dangerousness to others, Murillo-Avila has no criminal convictions. As noted above, his 2015 traffic citation was dismissed, and his 2022 traffic citation is still unresolved. And these traffic citations, over seven years apart, do not indicate a pattern of violations, dangerous conduct, or dangerousness.

Moreover, while the crime of possession of a firearm by a prohibited person is serious, Murillo-Avila would not be in violation of the law but for his immigration status. He was not brandishing or using the handgun when interviewed by agents but possessed it for self-protection at the tire shop. While the United States asserts that the fact that Murillo-Avila bought the gun at a gun show is evidence that he knew he should not have possessed the firearm, this is purely speculative, and his reaction goes more to the issue of whether the dealer provided him the proper paperwork not whether he knew he could not possess the firearm because of his status. [DE 10 at 31 ("When pressed about why he did not purchase the gun from a dealer that required paperwork, he advised that he knew what the agent's were getting at and would not answer, certainly implying that he knew he could not legally purchase a firearm.")]. There are any number of ways to obtain a firearm illegally off the streets, to argue that purchasing from a gun show from a dealer who did

not provide certain paperwork is evidence of intent and may go to the weight of evidence of guilt but not dangerousness. *See* 18 U.S.C. § 3142(g)(2); *Stone*, 608 F.3d at 948.

The appearance bond entered by the Magistrate Judge mitigates the United States's concern of dangerousness in driving as it prohibits Murillo-Avila from driving unless he obtains a valid driver's license, and further prohibits Murillo-Avila from possessing a firearm. As such there is a condition, or combination of conditions, which would mitigate risk to the community from Murillo-Avila's driving or potential dangerousness possessing a firearm.

c. Factors Under Section 3142(g)(1)

As to 18 U.S.C. § 3142(g)(1), the nature and circumstances of the offense charged, as noted above Murillo-Avila has no violent history or criminal convictions and is charged with possession of a firearm by a prohibited person solely as result of his immigration status.

As to 18 U.S.C. § 3142(g)(2), the weight of the evidence, this factor specifically refers to the weight of the evidence of dangerousness and not the weight of the evidence of guilt. *Stone*, 608 F.3d at 948. Here, Murillo-Avila's has no criminal convictions and potential dangerousness is mitigated by the conditions set forth above.

As to 18 U.S.C. § 3142(g)(3), the Court considers the history and characteristics of the defendant which include a wide range of factors such as the defendant's character, family ties, employment, financial resources, criminal history, and whether, at the time of the current offense or arrest, the defendant was on release pending trial. The defendant has lived in Louisville nearly his entire life, is employed in family tire business, lives with fiancé/girlfriend of twelve years, and has no criminal history. As discussed above, he has strong ties to this community.

As to 18 U.S.C. § 3142(g)(4), the nature and seriousness of the danger to any person or the community that would be posed by defendant's release must be considered. Again, Murillo-Avila

has no criminal convictions, and any arguments raised by the United States as to dangerousness are mitigated by the conditions set forth in the appearance bond.

### III.   CONCLUSION

The Court has reviewed the evidence presented at the detention hearing and listened to the hearing in its entirety. Simply put, the ICE detainer alone cannot substantiate a finding of risk of flight or dangerousness without more. Looking at all the evidence presented, lack of a presumption, lack of any criminal convictions, lack of violence, strong ties to the community, family, employment history, and circumstances of the alleged offense, the failure to appear three years ago on a traffic citation without further evidence, cannot by itself substantiate a risk of flight or dangerousness, nor can it in combination with the ICE detainer which is for probable cause and not a final removal order.

For the reasons explained above the Court does not find that clear and convincing evidence exists that Murillo-Avila poses a danger to the community or that there is no condition or set of conditions of release that can adequately protect the community. Further, the Court does not find by a preponderance of the evidence that Murillo-Avila poses a flight risk or risk of nonappearance sufficient to warrant detention. If the United States, generally, wishes to detain Murillo-Avila because of the ICE detainer, there is a 48 hour hold pursuant to that detainer. There are not, however, reasons to detain him pursuant to the Bail Reform Act.

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the United States's Motion to Revoke Release Order [DE 10] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 28, 2025

Cc:     Counsel of Record